## JOHN W. CARR v. PETER NEVA, John Neva, and Joe Koenig.

(164 N. W. 729.)

**Verdict — convincing evidence — based on — harmless error — not vacated for.**
1. A verdict based on clear and convincing evidence will not be vacated for harmless error.

**Assault and battery — counterclaim — defendant asserting plaintiff was aggressor — stricken out on motion — if error, same was harmless — verdict finding defendant wrongdoer.**
2. In an action for assault and battery wherein the defendant by way of counterclaim asserts that the plaintiff was the aggressor and that the defendant is entitled to recover damages against plaintiff for injuries sustained during the altercation, the error if any in striking out such counterclaim is harmless where the jury by its verdict finds that the defendant was the wrongdoer.

**Evidence — admission of — incompetent — error — cured by later withdrawal — general rule.**
3. As a general rule error in the admission of incompetent evidence is cured by the subsequent withdrawal thereof.

**Exemplary damages — verdict allowing — against three joint wrongdoers — compensatory damages — against two only — setting aside — not ground for.**
4. A verdict awarding exemplary damages against three joint wrongdoers will not be set aside as to one of them, merely because the jury returned a verdict for compensatory damages against only two of such three joint tortfeasors, where, in addition to the general verdict, the jury returned special findings under which all three were clearly liable for compensatory damages.

Opinion filed September 26, 1917. On petition for rehearing filed October 5, 1917.

Appeal from District Court, Stutsman County, Honorable *J. A. Coffey,* Judge.

Affirmed.

*Knauf & Knauf,* and *Edward P. Kelly,* for appellants.

One tort may be counterclaimed against another tort where the two arise out of the same transaction.

The statute means something more than matters of contract—arising out of the same transaction; it may be a "performance" or an "affair;" it may mean two persons engaged in performing torts against each other. Comp. Laws 1913, § 7449; Webster; Advance Thresher

Co. v. Klein, 28 S. D. 177, L.R.A.1916C, 514, 133 N. W. 51; Hannahs v. Provine, 28 S. D. 200, 133 N. W. 53; Pelton v. Powell, 96 Wis. 473, 71 N. W. 887; Rev. Stat. U. S. §§ 2655, 2656; Vilas v. Mason, 25 Wis. 310; McArthur v. Green Bay & M. Canal Co. 34 Wis. 139; Gilbert v. Loberg, 86 Wis. 661, 57 N. W. 982; Collins v. Morrison, 91 Wis. 324, 64 N. W. 1000; Wood v. Pierson, 45 Mich. 313, 7 N. W. 888; Ryan v. Lewis, 3 Hun, 429; Heigle v. Willis, 50 Hun, 588, 3 N. Y. Supp. 497; Slone v. Slone, 2 Met. (Ky.) 339; Schnaderbeck v. Worth, 8 Abb. Pr. 37; Sheehan v. Pierce, 70 Hun, 22, 23 N. Y. Supp. 1119.

A counterclaim must be a cause of action arising out of the same transaction, and that this prescription includes actions of tort is plainly indicated by the fact that it is contradistinguished from that contained in subdivision 2, which is confined to actions on contract. Comp. Laws 1913, § 7449, subd. 1; Heigle v. Willis, 50 Hun, 588, 3 N. Y. Supp. 497.

Where two parties engage in a fight, and the party who thinks himself to have been assaulted and beaten brings action for damages, the other party may counterclaim and show the excessive and unnecessary force and violence used against him. Dole v. Erskine, 35 N. H. 510; Elliott v. Brown, 2 Wend. 499, 20 Am. Dec. 644; Cooley, Torts, 165; Darling v. Williams, 35 Ohio St. 63; Gizler v. Witzel, 82 Ill. 322; Cockcroft v. Smith, 2 Salk. 642, 91 Eng. Reprint, 541; State v. Wood, 1 Bay, 351; Curtis v. Carson, 2 N. H. 539; Philbrick v. Foster, 4 Ind. 442; Bartlett v. Churchill, 24 Vt. 218; Brown v. Gordon, 1 Gray, 182; Ogden v. Claycomb, 52 Ill. 365; Riddle v. State, 49 Ala. 389; Williams v. State, 44 Ala. 41, and cases cited; Carpenter v. Manhattan L. Ins. Co. 93 N. Y. 556; Murphy v. McQuade, 20 Misc. 671, 46 N. Y. Supp. 382; Rev. Codes 1899, § 5274; Hanson v. Skogman, 14 N. D. 447, 105 N. W. 90.

Where questions call for the mere conclusion of the witness and proper objection is made, it is error to admit such testimony. Porter v. Valentine, 18 Misc. 213, 41 N. Y. Supp. 507; Morrissey v. Ingham, 111 Mass. 63.

The justice court had no authority to enter any judgment, and evidence thereof was incompetent and immaterial. Code, § 8961; Crisp v. State Bank, 32 N. D. 263, 155 N. W. 78.

Where the court erroneously admits testimony, but afterwards strikes it out, the original error is generally cured. But there is a well-defined exception to the rule, which is also established as a general rule itself, and that is "where the evidence thus admitted is so impressive that, in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by an instruction of the court to disregard it, the judgment will be reversed on account of its admission and a new trial granted." 38 Cyc. 1441–1443; State v. McGahey, 3 N. D. 293, 55 N. W. 753; Bishop v. Chicago, M. & St. P. R. Co. 4 N. D. 536, 62 N. W. 605; Thomp. Trials, § 723; Armour & Co. v. Kollmeyer, 16 L.R.A.(N.S.) 1110, 88 C. C. A. 242, 161 Fed. 78; Hopt v. Utah, 120 U. S. 430, 30 L. ed. 708, 7 Sup Ct. Rep. 614; Waldron v. Waldron, 156 U. S. 363, 39 L. ed. 453, 15 Sup. Ct. Rep. 383; Whittaker v. Voorhees, 38 Kan. 71, 15 Pac. 874; Tourtelotte v. Brown, 4 Colo. App. 377, 36 Pac. 73; Taylor v. Adams, 58 Mich. 187, 24 N. W. 864; Foster v. Shepherd, 258 Ill. 164, 45 L.R.A.(N.S.) 167, 101 N. E. 411, Ann. Cas. 1914B, 572; Chicago Union Traction Co. v. Arnold, 131 Ill. App. 599; Sinker v. Diggins, 76 Mich. 557, 43 N. W. 674; Wojtylak v. Kansas & T. Coal Co. 188 Mo. 260, 87 S. W. 506; Chicago, M. & St. P. R. Co. v. Newsome, 98 C. C. A. 1, 174 Fed. 394; Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054.

It was proper to show all that defendant said by way of admissions in the court below,—the justice court,—but it was error to show all that was done and what the justice said to him, and the admission of such evidence could have no other effect than to prejudice the jury. Breitenbach v. Trowbridge, 64 Mich. 393, 8 Am. St. Rep. 829, 31 N. W. 404; 1 Greenl. Ev. § 537, note; Phillipps Ev. 523, note 4; Clark v. Irvin, 9 Ohio, 132; Crawford v. Bergen, 91 Iowa, 675, 60 N. W. 205; Root v. Sturdivant, 70 Iowa, 55, 29 N. W. 802; Rudolph v. Landwerlen, 92 Ind. 34; Birchard v. Booth, 4 Wis. 67; Wisnieski v. Vanek, 5 Neb. (Unof.) 512, 99 N. W. 258; 1 Greenl. Ev. 16th ed. § 527; Risdon v. Yates, 145 Cal. 210, 78 Pac. 642.

In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury in addition to the actual damages may give damages for the sake of example; and, by way of punishing the defendant, actual damages against Koenig were not found by the

jury. Therefore there was no ground for exemplary damages. Comp. Laws 1913, § 7145; Kuhn v. Chicago, M. & St. P. R. Co. 74 Iowa, 137, 37 N. W. 116; Maxwell v. Kennedy, 50 Wis. 545, 7 N. W. 657; Boardman v. Marshalltown Grocery Co. 105 Iowa, 445, 75 N. W. 343; Schippel v. Norton, 38 Kan. 567, 16 Pac. 804.

*S. E. Ellsworth,* and *James Carr* for respondents.

Where judgment is entered and motion for new trial is made and an order made denying the motion and appeal is taken, and in the undertaking on appeal the judgment is the only adverse proceeding specified whereby appellant feels aggrieved, the appeal is only from such judgment, and that so far as an appeal is attempted to be taken from the order denying a new trial, it is ineffectual. Sucker State Drill Co. v. Brock & Richardson, 18 N. D. 598, 120 N. W. 757.

Specifications to avail the party must be served with the notice of appeal, and be legitimately brought into the record. Comp. Laws 1913, § 7656.

The test of whether or not the cause of action made the subject of a counterclaim arises out of the same transaction as that set forth in the complaint, depends upon a judicial examination of the pleadings. It is not sufficient for a party to allege in the beginning of his counterclaim that the facts pleaded arise out of the same transaction and fracas set forth in the complaint. It must appear from the facts pleaded that the counterclaim does arise out of the same cause of action set forth in the complaint. Comp. Laws 1913, § 7749; Wrege v. Jones, 13 N. D. 267, 112 Am. St. Rep. 679, 100 N. W. 705, 3 Ann. Cas. 482.

It is held that one assault cannot be the subject of a counterclaim against the cause of action for another assault, even though they are alleged to have occurred in the same affray. Schnaderbeck v. Worth, 8 Abb. Pr. 37; Prosser v. Carroll, 33 Misc. 428, 68 N. Y. Supp. 542.

The fact that the defendants act in unison in making the assault, and contribute effort or encouragement to bring it about or to further the carrying out of the same, is sufficient to establish joint liability. Herron v. Hughes, 25 Cal. 556; 8 Cyc. 657, 677.

"At least nominal damages may be recovered where a legal right is infringed. Punitive damages may be awarded in a legal action though

38 N. D.—11.

only nominal damages are recovered." Press Pub. Co. v. Monroe, 51 L.R.A. 353, 19 C. C. A. 429, 38 U. S. App. 410, 73 Fed. 196.

This is also true though no actual damages are sustained. Lampert v. Judge & D. Drug Co. 238 Mo. 409, 37 L.R.A.(N.S.) 533, 141 S. W. 1095, Ann. Cas. 1913A, 351; Vlasservitch v. Augusta & A. R. Co. 85 S. C. 291, 67 S. E. 307.

ROBINSON, J. This is an action to recover damages for a grave and unprovoked assault and battery. On evidence showing the guilt of each defendant beyond a reasonable doubt, the jury found a verdict against them. From the judgment they appeal to this court and assign about eighty errors, based on objections and exceptions. To nearly every simple question the counsel has appended needless objections and exceptions or motions to strike. But such objections and exceptions are not a legal tender, and are no cause for vacating a verdict and judgment based on clear and convincing evidence. When a party commits a brutal and unprovoked assault and battery, it is folly to think of paying off and making a settlement by any number of legal quibbles. The only real question is, Has the defendant had a fair trial and is the verdict well sustained by the evidence?

The plaintiff is an attorney of Jamestown, and at the time of the assault he was on the farm of Andrew Neva booking and superintending proceedings of a friendly chattel-mortgage sale. The defendants are related. They went together and sought an opportunity to insult and quarrel with the plaintiff. He is not a fighter. He had no officer present at the sale to protect him, and he tried to avoid a quarrel, and said he did not want any trouble with them. When his eyes were turned away, Peter Neva struck him a violent blow on the mouth, breaking out two of his front teeth. The parties clinched and in the struggle Peter fell or was brought to the ground. The plaintiff let him up on demand of the other defendants. Plaintiff then started for his car, and was about to enter it when Peter Neva struck him a violent blow on the nose, fracturing the bone. The other defendants stood by and urged Peter to go after him. Peter was arrested and brought before a justice of the peace. He pleaded guilty and paid a fine of $25. On the trial in district court there was a question con-

cerning the jurisdiction of the justice of the peace and the admissibility of his docket in evidence. Hence, the offer of such evidence was withdrawn, and the justice testified the same as any other person might to the admissions made to him by Peter Neva. The record of the trial covers 348 pages. It appears that Joe Koenig is a brother-in-law of the Nevas, who are brothers. The sale was at the farm of Andrew Neva. The three defendants were there during the sale. John Neva claimed a prior mortgage on a small part of the property, and he said to plaintiff: "What are you sons of bitches going to do about my mortgage?" During the sale every time plaintiff came near John Neva he would say: "I would like to see those sons of bitches foreclose a mortgage on my property. I would like to see them after dark." He said at different times: "Why don't the sons of bitches pay my mortgage?" The other defendants would say: "That is right John; make him pay you."

Plaintiff testifies: "I went to the door of the barn to see the cattle, and he stepped up to me and said 'When are you sons of bitches going to pay my mortgage?' The other defendants were standing by him. Then Joe Koenig came out of the barn and walked around in front of me, and walked directly up against me, and said: 'Oh! Excuse me; I did not see you.' In two or three minutes later he came back from the barn and again bumped against me from the back. Then he said: 'Excuse me; I did not see you.' And the other defendants smiled. They watched and laughed. He used the words 'sons of bitches' about continuously for about two hours prior to the close of the sale. At the close of the sale, when most of the people had gone home, defendants came up and stood around. Finally, Peter stepped up and said: 'Do you know what I would do if you sons of bitches were foreclosing a mortgage on my farm?' He said, 'I would like to see you sell the stuff that I had a mortgage on you cowardly sons of bitch.' I turned my eye from him a moment. He drew back and struck me across the mouth. The blow broke out these teeth (his two front teeth). He struck me again, and I warded off the blow and grabbed hold of his arm and shoulder and pushed him back. He kicked me with his right foot on the abdomen, and John Neva and Joe Koenig said at this time: 'Go after the son of a bitch; go after him.' He continued trying to

strike me. I wrestled with him and threw him down, and he fell on his stomach. I let him up, started toward the automobile. He followed me up and finally landed another blow on the end of my nose. It caused the blood to sputter all over my face, and as I took out my handkerchief to wipe it off, he came up quietly and struck me on the left side of the nose and fractured the bone on the left side of my nose."

Bonhus was at the sale and fully corroborates the plaintiff, and he testifies that the other defendants made no effort to rescue Carr from Pete; they said, "Go after him Pete." I heard Koenig's voice say: "The son of a bitch." They urged him on. John Neva hollered: "Give him another one, Pete." So Pete came over and struck him again.

Dr. Gerrish examined and treated Carr the morning after he was injured. He testifies that Carr's mouth and lips were cut in two or three places and very badly swollen. He had two front teeth broken out or off. He had a broken nose right along the side. He had a black eye. The doctor saw him once or twice every day for two weeks, and thinks the fracture of the nose is a permanent affliction. The doctor's bill was seventy-five or a hundred dollars.

Dentist Reardon testifies that on examination of the plaintiff he found two front teeth broken off the upper jaw and the gums were badly bruised.

Hammerstaedt, the auctioneer, well corroborates the plaintiff's testimony.

Theodore Anderson saw the conflict, and he saw Neva strike Carr.

John Neva testified thus: "I said little brother go to him. Go to the son of a bitch." (197.)

No person can read over the testimony without being satisfied that the verdict is just and in moderation. Indeed, it should have been for a much larger sum.

As a counterclaim Peter Neva by answer averred that he was damaged to the amount of $1,000, by injury received in the scuffle with Carr. To this there was a demurrer, which was sustained by an oral ruling, and the parties went to trial. The ruling is of no consequence. The parties went to trial, and were given ample opportunity to prove all the facts and circumstances in regard to the matter of dispute, and the testimony shows beyond all question that the defendants were the

aggressors from start to finish, and they were each guilty of an unprovoked and brutal assault and battery. Judgment affirmed.

BRUCE, Ch. J. (specially concurring). I concur in the result and judgment announced in the opinion of Mr. Justice Robinson. I do so because I think that no proof was necessary of a prior agreement or conspiracy on behalf of the defendants to make the assault. There was, to my mind, evidence of a joint tort, and that those who did not actually make the assault aided and abetted in its consummation. This I believe is all that is necessary.

GRACE, J. (dissenting). The appeal in this case is in a very complicated condition. There are many irregularities in the same, making it exceedingly difficult for this court to give proper consideration to all the questions presented in the appeal. It would seem that matters coming before the supreme court should be so presented to this court in the proceedings concerning appeals that it would not be necessary for the court to strain statutes relative to appeals in order to reach the consideration of the merits of the questions presented on appeal.

The first matter under consideration is a demurrer to the counterclaim pleaded in the answer of Peter Neva, one of the defendants. The order sustaining such demurrer was made on the 20th day of December, 1915, in open court, in the course of the preliminary part of the trial. After the trial of such action the defendant Peter Neva appealed from such order allowing such demurrer, to the supreme court, serving notice of such appeal, and an undertaking in the sum of $250. Afterwards an appeal was taken from the judgment in said action, and a proper notice of appeal and undertaking also perfected therein. The defendant also undertook to appeal from the order denying motion for judgment *non obstante* and the order denying motion for a new trial, but did not mention such orders in his undertaking in the appeal from the judgment. There is therefore no appeal from such orders. Sucker State Drill Co. v. Brock & Richardson, 18 N. D. 598, 120 N. W. 757. In that case this court said: "On an appeal from both a final judgment and from an order denying a new trial but one undertaking is required to perfect such appeals. . . . Such undertaking must refer to each of the appeals, and if it merely recites the

appeal from the judgment, the appeal from the order is ineffectual and may be dismissed on motion." In this case, in the undertaking in the appeal from the judgment no mention is made of the appeal from the orders denying judgment *non obstante* or motion for a new trial, and such appeals are therefore ineffectual. The defendant, in the lower court, in serving his motion for judgment *non obstante* or for a new trial, served therewith proper specifications of error. The appellant in appealing from the final judgment served notice of appeal and undertaking, but did not serve a statement of errors of law complained of, but stated in such notice of appeal from such judgment as follows: "And you will also take notice that there was heretofore served upon you an assignment and specification of errors in said matter, served upon you with the motion for judgment notwithstanding the verdict or for a new trial, and this appeal is also taken from the order of said court dated the 24th day of December, 1915, overruling the motion for judgment notwithstanding the verdict, and from the order denying and overruling the motion for a new trial in the above-entitled matter, and from the whole thereof."

We have seen that from the failure to mention the appeals from such orders in the undertaking, such appeals are ineffectual. We have also seen that in the appeal from the judgment no new specifications of error were served, but the specifications of error served in the two motions were referred to and made the specifications of error in the appeal from the judgment.

We will for the purpose of disposing of this case consider that the specifications of error served with such motions are the specifications of error in the appeal from the judgment, but in doing this we do not uphold that such method of considering specifications of error can be allowed as a general rule, but that such procedure is taken in order to find some way to consider the matters involved in the appeal. Section 7656, Compiled Laws of 1913, says in plain language what shall be done with reference to serving statement of errors of law complained of, and it would seem that the language and meaning thereof is so plain that it could hardly be misunderstood. The procedure therein provided for should have been followed.

Referring now to the demurrer, we will consider the merits thereof in connection with and as a part of all the other matters appealed

from, including the judgment. The matters pleaded in the answer by way of counterclaim in the case at bar were a proper counterclaim. The damages alleged in the counterclaim arose out of the same transaction. The alleged assault and battery of the plaintiff upon the defendant was directly connected with the subject-matter of the action. It was a part of the same affray and a part of the same transaction. One tort may be counterclaimed against another tort where the tort counterclaimed is connected with the subject of the action. McArthur v. Green Bay & M. Canal Co. 34 Wis. 139; Walsh v. Hale, 66 N. C. 233; Slone v. Slone, 2 Met. (Ky.) 339; Heigle v. Willis, 50 Hun, 588, 3 N. Y. Supp. 497.

It is a general rule, however, that one tort cannot be counterclaimed against another unless the tort counterclaimed arose out of the same transaction or is connected with the subject-matter of the action. In the case at bar there is no doubt but that the tort sought to be counterclaimed arose out of the same transaction. It was directly connected with the subject-matter of the action. It is a proper subject, therefore, of counterclaim. The plaintiff's cause of action is based upon injuries which he claims defendant inflicted upon him in an assault and battery, and the defendant sets up counterclaim for damages claimed to have resulted by reason of injuries inflicted upon him by the plaintiff in the same assault and battery occurring at the same time in one transaction. If the claim for damages by plaintiff against the defendant, and the claim for damages by the defendant against the plaintiff, are logically related so as to show that they arose out of the same transaction, that is, in this case, the same general fight or fracas, there would seem to be no doubt but that the one tort might be counterclaimed against the other. Gutzman v. Clancy, 114 Wis. 589, 58 L.R.A. 744, 90 N. W. 1081.

The purpose of the statutes allowing counterclaim in favor of the defendant against the plaintiff, arising out of the same transaction or connected with the same subject-matter, is to allow parties to the same suit to settle in such suit as far as convenient and practicable all controversies arising out of the same transaction set forth in the complaint. Pelton v. Powell, 96 Wis. 473, 71 N. W. 887. The word "transaction" where used in a statute providing that counterclaim may be interposed when arising out of the same transaction set forth in the

complaint as the foundation of plaintiff's claim includes actions of tort. Deagan v. Weeks, 67 App. Div. 410, 73 N. Y. Supp. 641; Heigle v. Willis, 50 Hun, 588, 3 N. Y. Supp. 497. This is not in conflict with Wrege v. Jones, 13 N. D. 267, 112 Am. St. Rep. 679, 100 N. W. 705, 3 Ann. Cas. 482, wherein the court declined to take the position that where the complaint is one for slander, another slander uttered at the same time and place and in the same conversation could be counterclaimed against the cause of action set forth in the complaint, for the reason that each slander constitutes a separate transaction. That is an entirely different matter from the one at bar. In that case, as soon as the slander was uttered by the defendant concerning the plaintiff in the hearing of a third person, the cause of action immediately accrued and became complete in favor of the plaintiff, and if the plaintiff after the utterance of the slanderous words by the defendant also uttered slanderous words concerning the defendant, it became a separate cause of action in favor of the defendant, and it was an entirely different transaction from the first one, and did not arise out of the first one. In that case the first transaction was complete in itself, that is, the first slander, and the second transaction or second slander was also complete in itself and had no relation to the first slander, did not arise out of it, nor was it a part of the first transaction. And we think in all probability, strictly speaking, under the rule regarding counterclaims, the court decided rightly in such case. That case, however, is not at all similar to the one at bar. In the case at bar, the transaction, the fight or fracas, or assault and battery, or whatever it may be termed, was one continuous transaction out of which all damages arose both concerning plaintiff and defendant, if any. The trial court should have permitted the counterclaim and should have received the testimony offered by the defendant Peter Neva to prove the injuries to his person, if any, that he received in the manner in which he claims he did receive them, and he should have been allowed to introduce expert testimony to show the extent of such injuries, and to refuse to allow the counterclaim to stand as part of defendant's pleadings and to receive competent testimony to prove the allegations of such counterclaim, was reversible error. The fact that the whole transaction of assault and battery was quite fully described in the testimony, and even if it be assumed that it was quite fully considered

by the jury, would not cure the error of denying the defendant the right
to plead his counterclaim, it being a proper counterclaim; and he
should have been permitted an opportunity to make an affirmative show-
ing thereon by expert or other competent testimony as to the actual
extent of his injuries. A counterclaim is defendant's alleged cause of
action against the plaintiff; and where it is a proper one, he should be
allowed to plead it, and have an opportunity to prove and establish the
truth of it, and in this case it is reversible error not to have allowed
him to do so.

There are seventy-six errors assigned in this record, and they are
in no manner grouped, and to consider each error would mean an
opinion long enough to make up very nearly one of the North Dakota
Reports. We will consider, therefore, but a few of the remaining
errors in disposing of this case.

Concerning assignments of error Nos. 15, 16, 17, 18, 19, 20, 21, 22,
and 23, all of which relate mostly to the reception of the evidence of
J. A. Murphy, who is a justice of the peace residing at Jamestown, we
conclude as follows: As we understand the matter, Stutsman county
has a county court with increased jurisdiction, and where such is the
case, under the laws of this state, justices of the peace have no power
to try and determine any criminal matter which comes before them,
even though the same would otherwise be within their jurisdiction but
for the existence of such county court. Such justice courts have only
the power of binding persons over to the county or district courts,
where there is sufficient testimony to show that some crime has been
committed and that the person who is charged with such crime has
probably committed it. This being true, J. A. Murphy as such justice
had no power to try and determine the assault and battery matter with
which Peter Neva was charged and to which charge he pleaded guilty
before the said J. A. Murphy and a fine imposed upon him. The said
justice having no jurisdiction to hear and determine such action, all
the testimony and proceedings in his court with reference to the guilt
of the defendant and with reference to his plea of guilty, fine, etc., were
inadmissible in the trial of the case at bar, and the admission of the
records of such justice showing the arrest, plea of guilty, and the fine,
etc., of the defendant Peter Neva, was prejudicial error and should
not have been received, and the objection of the defendant to their

admission should.have been sustained. It was prejudicial error not to sustain the objection to such testimony, and such error was not cured by subsequent withdrawal of the objectionable testimony and instruction by the court to the jury to disregard such testimony.

Section 9441, Compiled Laws of 1913, defines conspiracy. Such section has six subdivisions, the first of which only is material here, which is as follows: "If two or more persons conspire to commit a crime, each of them is guilty of a misdemeanor." Webster defines conspiracy as follows: "To conspire is to make an agreement, especially a secret agreement, to do some act, as to commit treason or a crime, or to do some unlawful deed; to plot together, to concur to one end; to agree." In Words & Phrases, page 1461, Bishop says that it "is the corrupt agreeing together of two or more persons to do by concerted action something unlawful, either as a means or as an end." "To constitute a conspiracy there must be not only an agreement to co-operate to do a certain thing or act, but the act must be unlawful. Connor v. People, 18 Colo. 373, 25 L.R.A. 341, 36 Am. St. Rep. 295, 33 Pac. 159."

There is no testimony in the record showing there was any agreement entered into, or conspiracy, to do an unlawful act. John Neva used a great deal of abusive and vile language according to the testimony of the plaintiff, but this vile and profane language standing alone does not prove a conspiracy. John Neva had a claim on some of the property of Andrew Neva by way of chattel mortgage, which he claims was a prior mortgage on some of the stock to the mortgage which was being foreclosed. With all the vile language used by John Neva, we may include in this discussion that of Joe Koenig, the act of John Neva in pulling off his coat, and the act of Joe Koenig, purposely or accidentally bumping into the plaintiff; and their vile language, if any, may be sufficient to tend in the direction of proof of the overt act which is necessary to occur or be performed by the party charged with conspiracy, except where the agreement or conspiracy, if any, relates to a felony upon the person of another or arson or burglary. Section 9444, Compiled Laws of 1913, reads as follows: "No agreement except to commit a felony upon the person of another, or to commit arson or burglary amounts to a conspiracy, unless some act beside such agreement is done to effect the object thereof, by one or more of the parties to such agreement."

The conspiracy, if any, in this case, would not be a conspiracy unless there was also an overt act. The abusive and vile language used by John Neva, and the pulling off of his coat, and the stumbling about by Joe Koenig and his bumping into the plaintiff, may be held sufficient to constitute the overt act, but there is no other testimony tending to show there was an agreement, conspiracy, combination, or confederacy, between the parties to commit an unlawful act. All of the parties might to a certain extent have acted together, but not by reason of any conspiracy or agreement. If it so happened that the three parties did appear to act together by reason of all of the transactions taking place within a short period of time and being continuous, that is, the use of the vile language by John Neva and the bumping into the plaintiff by Joe Koenig, and finally, assault and battery by the defendant Peter Neva, nevertheless, if this so happened, not as a result of a conspiracy or an agreement to commit an unlawful act, but in a spontaneous manner without premeditation, they or any of them could not be adjudged to have entered into a conspiracy. Conspiracy is a deliberate act. Conspiracy need not be any great length of time before the commission of the unlawful act, but it nevertheless must have existed prior to the time the overt act, or unlawful act, was committed, otherwise it could not come within the definition of conspiracy. In a case such as the one at bar, the agreement and conspiracy must be shown by competent testimony or by such facts and circumstances as to convince the average mind that such agreement existed, and the overt act also proved, to constitute conspiracy. Considering the whole case, and also all of the testimony, all of which has been carefully examined, we are clear there is an entire failure to prove any conspiracy. This being true, and John Neva and Joe Koenig having had nothing whatever to do with the actual assault and battery, that is, with the infliction of any punishment or damage upon the plaintiff, the case as to each of them should have been dismissed, and the court should have granted the motion of each of such defendants for a directed verdict, dismissing the case as to each of them.

## On Petition for Rehearing.

Per Curiam: Appellants have filed a petition for rehearing. It is first contended that the court failed to decide the question of

the right of Peter Neva to counterclaim for damages claimed to have been sustained by said Peter Neva during the altercation with the plaintiff. And in this connection it is contended that "there was strong testimony tending to show that the plaintiff provoked and began the assault." The question of defendant's liability was submitted to the jury under appropriate instructions. The jury was instructed that the plaintiff must establish his cause of action by a preponderance of the evidence. It is inconceivable that a jury could under these instructions have returned a verdict in favor of the plaintiff if it had actually believed him to be the aggressor and the defendant Peter Neva to have been the innocent and injured party. It seems too clear for argument that the error, if any in sustaining the demurrer to the counterclaim was error without prejudice.

It is also contended that the court failed to pass upon the question of the admissibility in evidence of the justice's docket containing the record of the admission of guilt of Peter Neva in the prosecution for assault and battery. As stated in the former opinion this docket was withdrawn, and we are agreed that the error, if any, in its admission, was cured by such withdrawal.

It is also contended that the court failed to pass upon the question of whether the verdict for exemplary damages returned against the defendant Joe Koenig can be permitted to stand in view of the fact that the jury returned no verdict for actual damages against him. This point was overlooked in the former opinion. We are entirely agreed with appellant's counsel that exemplary damages cannot be awarded unless actual damages in some amount, either nominal or compensatory, are proved. It is true the jury in this case did not in its verdict assess actual damages against the defendant Joe Koenig, but in special interrogatories submitted to the jury and returned with its verdict it specifically found both that the injuries inflicted upon the plaintiff by Peter Neva were inflicted by him pursuant to a conspiracy between all three defendants, Peter Neva, John Neva, and Joe Koenig, and that all these three parties worked in conjunction with each other. Under these facts as found by the jury the plaintiff was clearly entitled to recover actual damages against the defendant Joe Koenig, and according to the jury's own finding such actual damages had been proved. The error on the part of the jury, therefore, in not assessing actual damages

against Joe Koenig was clearly error in his favor, of which he ought not to complain.

We are satisfied that the verdict was just and right.

A rehearing is denied.