JOHN STEIN, Administrator, Appellee, v. GALEN A. SHARPE, Appellant.

No. 45382.

Helsell, Burnquist & Bradshaw and Garfield & Baker, for appellee.

Hallagan, Fountain, Steward & Cless and P. C. Lovrien, for appellant.

MITCHELL, J.— █ John Stein as administrator of the estate of Minnie Stein, deceased, commenced this action at law against Galen A. Sharpe, to recover damages for the alleged wrongful death of his wife, arising out of an automobile accident between an automobile owned by the deceased, and a motor truck owned and operated by the defendant. The case was tried to a jury, which returned a verdict in favor of the plaintiff in the amount of $7,750. The defendant has appealed. We are furnished with a very able and lengthy brief by the appellant, almost half of which is directed to the alleged error of the court in overruling ground No. 2 of the appellant's motion for a directed verdict, which is as follows:

"2. That the plaintiff has wholly failed to discharge the burden of proving freedom from contributory negligence but the evidence in the light most favorable to the plaintiff establishes conclusively that the driver of the Stein car was guilty of contributory negligence as a matter of law."

The accident out of which this suit arises occurred on September 22, 1939, at about 9 a. m. at the intersection of two graveled county roads, some two miles south and two miles west of the town of Humboldt, in Humboldt county, Iowa. The high-

way was straight and comparatively level for more than a quarter of a mile in each direction from the intersection in question. There was nothing but open fields to the northwest, northeast, and southeast of the intersection. However, there was a field of tall corn to the southwest of the intersection high enough to partially obstruct the view.

The appellee's decedent was the owner of a 1935 Ford sedan. At the time of the accident this automobile was being driven by her husband, who was accompanied by decedent, his wife, riding in the front seat beside him.

The Stein car approached this intersection traveling from west to east intending to pass on through the intersection and proceed on to the town of Humboldt. The speed of the Stein car was either 25 miles per hour, as testified to by the appellee, or 45 miles per hour, as testified to by the appellant. The Stein car was in the center of the intersection at the time of the impact when it was struck near the front of the right front door. The appellant, owner and operator of his 1938 Dodge truck, was traveling north on the north and south county road.

At the southwest corner of the intersection there was a cornfield. A small area across the corner of the field had been cut. There is a dispute in the testimony as to whether this was 45 feet from the corner post or approximately eight feet. Weeds had grown up in this place, which tended to more or less obscure the view of both drivers as they approached the intersection. The only witnesses who testified as to the manner in which the accident happened, were the appellant, the driver of the truck, and the appellee, the driver of the automobile. The only evidence the appellant offered was his own testimony.

There is a sharp conflict in the testimony of these two witnesses, and as this error is based on the failure to direct a verdict, we must consider the evidence in the most favorable light to the appellee.

According to the appellee's testimony, as he approached the intersection, he was driving about 25 miles per hour, and slowed down to some extent at the corner. He looked to the south; there is some dispute as to just where he looked. He says about eight feet from the corner, while appellant contends it was between 8 and 45 feet, and there was no car approaching. He

then looked to the north and proceeded into the intersection, having reached the center or a little to the east of the center of the intersection when his car was run into by the appellant's truck. Appellant's story is, that he was traveling around 40 miles an hour, as he neared the intersection, and then slowed down to approximately 35 miles an hour. He looked first to the east and the road was clear. He then looked to the west, and continued looking west as he approached the intersection. He says he was around 30 to 40 feet south of the intersection when he first saw the Stein car, and according to his story the Stein car was farther from the intersection than he was. He applied his brakes immediately, and skidded into the Stein car. There is evidence, by way of an admission made by the appellant immediately after the accident, that he was traveling about 50 miles an hour. From the conflicting evidence the jury would have had a right to believe that the appellant was traveling at 50 miles an hour, and that the appellee's car was traveling between 25 and 35 miles an hour. As the collision took place in the center of the intersection, and as appellant's truck ran into the front door of the Ford sedan, appellee's car must have been in the intersection first. At least there is evidence from which the jury could have so found. This is an intersection accident, there is a conflict in the evidence and it was for the jury to determine which of the conflicting stories it would believe. The lower court was right in overruling the motion to direct.

Certain objections were made to the instructions. No requested instructions were asked.

It is argued that the court erred in giving instruction No. 1, by submitting to the jury specification of negligence; No. 5, charging the appellant with failure to yield the right of way, and further erred in instruction No. 14 in instructing the jury in regard to the said charge of negligence.

Appellant does not contend that instruction No. 14 was not a correct statement of the law but his complaint is that the same was without support in the evidence. The court submitted to the jury the fifth specification of negligence wherein the appellant was charged with failing to grant the right of way to the appellee's car in the intersection in question. Instruction No. 14

followed the statute and instructed the jury, in effect, that if they found that the Stein car was the first to enter the intersection, and if they further found the appellee had obeyed all of the laws and rules of traffic as explained in the instructions, then the jury should find that the Stein car had the right of way at the intersection and the appellant should have yielded to the plaintiff such right of way.

The second portion of instruction No. 14 was favorable to the appellant and instructed the jury that if they found the two vehicles "were approaching the intersection substantially at the same moment and that there was danger of a collision, then it was the duty of the appellee to yield the right of way to the defendant."

Counsel's complaint on these propositions is his statement that there was "no evidence to support the charge that the plaintiff's car had entered the intersection before the defendant."

We cannot agree with appellant. There was evidence upon which the jury could have found that the Stein car was first to enter the intersection. In the recent case of Short v. Powell, 228 Iowa 333, 336, 291 N. W. 406, 407, Justice Sager speaking for the court said:

"Each seeks to read this statute so as to put the other at fault. Can it be said under this record as a matter of law that the plaintiff did not enter the intersection first? We think the question answers itself in the negative. If the jury had found as a fact that plaintiff was first to enter the intersection, he had the right of way. See Hartman v. Red Ball Transportation Co., 211 Iowa 64, 68, 233 N. W. 23, 25, where we said: 'There is no possible hypothesis upon which the testimony of the witnesses, either as to the speed or relative position of the respective vehicles at any instant preceding the collision, may be determined absolutely.'"

It is claimed that the court erred in admitting certain testimony as to the speed of appellant's truck. We do not pass upon the question, but if there was, it cannot be claimed to be prejudicial because there is an admission made by the appel-

lant without objection that his truck was traveling about 50 miles an hour.

■ Next, the appellant contends that the verdict is excessive. The verdict returned by the jury was in the sum of $7,750, this, however, included damage to the automobile and other items and it is fair to say that the amount allowed for the wrongful death was not to exceed $7,000. It may be conceded that the quantum of damages is a jury question, but the verdict returned must be within reasonable limits, under the facts disclosed by the evidence. Minnie Stein at the time of her death was 47 years of age, in good health and had an expectancy of 23 years. She was married and the mother of seven children, six of whom were living. She was the owner of one half of the personal property on the Stein farm, the undisputed value of which was $4,347. She owned an automobile worth $450. She had recently inherited the sum of $4,000, and a one-fifth interest, subject to a life estate in her mother, of a 120 acres in Calhoun county, valued at $100 per acre. According to the evidence she was about to invest her money in the purchase of a farm. She and her husband working together had accumulated this property, reared a family of six children, the youngest of whom at the time of her unfortunate death was seven and the oldest nineteen, through a period of first speculation and then of depression in the farming area of Iowa, without debt.

In the case of Hanna, Admx., v. Central States Electric Co., 210 Iowa 864, 232 N. W. 421, this court approved a verdict for the death of a married woman in the amount of $6,000. No one it seems to us could read the record in the case at bar, and say that a verdict of $7,000 was excessive. An industrious, thrifty mother, gifted with the ability of planning and providing, who during the trying period of the depression in Iowa, with her husband, supported a family of six children and also accumulated almost $5,000 worth of property.

■ Appellant argues that the amount of the verdict placed at five percent interest compounded annually would double itself in less than 15 years. We have searched the record carefully to try and find out who testified where they could get a good sound investment that would pay five percent annually. There

is no such evidence. It is a matter of common knowledge, of which this court will take judicial notice, that United States Government bonds yield only around two percent, and Iowa Primary Road bonds even less than that. In face of the amount money now yields, a verdict of $7,000 can hardly be compared with one of some years ago, when five percent and even higher was the current interest rate.

Other errors are alleged, all of which have been given careful consideration. Finding no error, it necessarily follows that the judgment must be and it is affirmed.—Affirmed.

RICHARDS, C. J., and SAGER, OLIVER, BLISS, HALE, HAMILTON, and STIGER, JJ., concur.