CARROLL E. DAVIDSON, Administrator, Appellee, v. JOHN VAST et al., Appellants.

No. 46078.

DECEMBER 15, 1942.

OPINION ON REHEARING JUNE 15, 1943.

Herrick & Ary, of Cherokee, and Edson & Edson, of Storm Lake, for appellants.

Whitney, Whitney & Stern, of Storm Lake, for appellee.

GARFIELD, C. J.—A rehearing having been granted, the opinion filed on December 15, 1942, reported in 6 N. W. 2d 840, is withdrawn and the following substituted therefor:

On the morning of August 1, 1941, decedent was driving a Chevrolet pickup truck south on a graveled highway which slopes gently to the south. Defendant was driving a Studebaker sedan west on an intersecting dirt highway. There is quite a steep hill about forty rods east of the intersection; then the dirt road levels off and continues west on a slight upgrade. Just west of the intersection there is a sharp elevation to the west. There were no stop signs at the intersection.

There were trees, shrubs, and weeds at the northeast corner of the intersection which obscured the view from both north and east. Southeast and northwest of the intersection were fields of corn in tassel. Visibility from the east and south was at least partly obscured because of the cornfield and the weeds at the roadside. The collision occurred in the northwest part of the intersection.

Both drivers were alone and no other person saw the collision. Defendant lived a quarter of a mile west but operated two farms east of the intersection. He was thoroughly familiar with the crossing and the lack of visibility. He considered it a dangerous intersection. Decedent lived in a different part of the same county. Several years before the collision, Davidson had driven many times on the graveled road past this intersection.

In the collision Roy B. Davidson received severe injuries from which he died early the next morning. His administrator brought this action to recover for his death. The trial resulted in a jury verdict and judgment for $7,000 from which defendant has appealed. We treat the case as if John Vast were sole defendant.

I. Defendant contends the evidence was insufficient to support any of these three charges of negligence which were submitted to the jury: 1. That defendant was driving at excessive speed and did not have his car under control. 2. That he failed to yield the right of way to decedent, who was approaching from defendant's right. 3. That defendant failed to keep a proper lookout.

Defendant's own testimony clearly warranted submission of the third charge of negligence. On direct examination defendant testified that he first looked to the north when he was six or eight feet east of the traveled portion of the graveled highway, that he saw nothing, but that he could then see north only about forty feet. He admitted that if he had driven three feet farther he could have seen about three hundred feet north. Defendant continued into the intersection without stopping. After looking north, he says he looked south, and then, when in the northwest corner of the intersection, looked north again and for the first time saw the Davidson pickup only ten feet away. The collision followed within a fraction of a second. Defendant said he could have stopped his car within two or three feet.

Defendant testified he knew when he first looked north that he could not see traffic from that direction. When he looked the second time the collision could not be avoided. Defendant testified:

"I didn't have any chance to stop then. * * * It was too late to do anything."

While defendant was not legally obligated to look to his right from any particular point, ordinary care required him to maintain a reasonably efficient lookout, to look when it would be conducive to protection, when it would "do him some good." 2 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., 230, 231, section 1038; id. 237, 241, section 1041; Smith v. Lamb, 220 Iowa 835, 263 N. W. 311; Bannister v. Illinois Cent. R. Co., 199 Iowa 657, 202 N. W. 766.

It was also proper to submit to the jury the charge that defendant was negligent in failing to yield the right of way to decedent. Under the applicable statute, chapter 175, Acts of the Forty-ninth General Assembly, decedent, who was approaching from the right, was entitled to the right of way if the paths of the two vehicles would intersect and there was danger of collision. The jury could have found there was danger of collision.

Although not so free from doubt, we think it was also

proper to submit the first charge of negligence that defendant's speed was excessive and his car not under control. Under section 5023.04, Code, 1939, it was defendant's duty to have his car under control and reduce his speed to a reasonable and proper rate when approaching and traversing the intersection. Section 5023.01 required defendant to drive at a careful and prudent speed under the conditions then existing. Under our right-of-way statute (chapter 175, Acts of the Forty-ninth General Assembly), as defendant was bound to know, traffic from the north was favored over traffic from the east, and, as defendant did know, visibility was obscured and there was much more travel on the graveled road than on the east-and-west road. Defendant's brother testified:

"As I came to that blind intersection I slowed down, just about almost to a stop. A person would have to do that in order to be safe."

On the morning in question, defendant was returning from Alta and Storm Lake with groceries and a piece of ice he had purchased. Threshing was in progress on a farm operated by him and he was apparently preparing to feed the threshers. He thus had a motive for haste. See 5 Am. Jur. 848, section 623. A farm wife who observed defendant's speed at a point about five hundred feet east of the intersection testified he was then traveling forty to fifty miles an hour. Defendant apparently does not seriously challenge this woman's testimony. He said, however, that he reduced his speed, without applying his brakes, to five to ten miles per hour as he approached the intersection and then continued until the impact at a speed of seven and one-half miles per hour; that when he observed decedent ten feet away, the pickup was traveling at fifty miles per hour and its front end struck the right side of defendant's sedan.

The jury was not bound to accept defendant's version as a verity. Cerny v. Secor, 211 Iowa 1232, 1237, 234 N. W. 193, 195; Hawkins v. Burton, 225 Iowa 707, 713, 281 N. W. 342; Fraser v. Brannigan, 228 Iowa 572, 579, 293 N. W. 50. The entire record warranted a finding that the facts were not as testified by defendant. A number of photographs of the two

vehicles were received in evidence and are before us. They clearly show that the damage to decedent's pickup was not to the front end but to the left side, just ahead of the seat. The front end of the Studebaker was badly wrecked. These exhibits are persuasive evidence that the impact, contrary to defendant's version, was between the front end of defendant's car and the left side of the pickup. They also constitute substantial evidence that the Vast car was being driven much faster than defendant testified.

Other physical facts are that the right front of the frame of the Vast car and the heavy cross-member across the front of the frame were bent down and back under the body. The left frame of the pickup was indented and sprung toward the center; "the rear wheels were probably a foot or more out of line with the front end"; the motor was torn loose from its mountings; "the floorboard was squeezed sort of sideways to make it look as an accordion." Defendant received a deep gash on each knee. Both cars came to rest in the ditch at the south side of the dirt road west of the intersection. The cars were of about the same weight. The jury could have found that defendant's car was a few feet west of the fence line on the west side of the graveled highway which was sixty-six feet wide. It was on its side, the wheels facing west and the radiator north. The Davidson car was headed south, lying on its right side, its wheels to the east. It was west of defendant's car, with a space of fifteen feet between the two.

At the time of the collision there was a three-hundred-pound piece of ice in the trunk of the Vast sedan. The lid to the trunk was down but not locked. The ice got out of the trunk as a result of the impact and was found up the hill in the center of the dirt road, the jury could find, about seventy-four feet nearly straight west of the point of impact.

Defendant testified:

"I didn't have time to wait, because I looked to the south. * * * I didn't stop because it takes too long to get started again."

A neighbor testified that defendant told him, the day of the collision, "he looked to the north and looked to the south and

everything turned black." Another neighbor testified that defendant told him, the day following the collision, "it happened before he knew it. Just that quick * * * Well, he says he didn't see nothing, if I can remember right." Another neighbor testified that Vast said, the following day, "it happened so fast he didn't know what happened." Defendant as a witness did not deny these conversations: This evidence is inconsistent with defendant's testimony about the collision.

Under all the circumstances, especially the obstructed view at the intersection, known to defendant, the failure of defendant to look at a place where he could effectively observe, and the fact that decedent was approaching from the right, we think the issue of speed and control of defendant's car was for the jury.

■ It is difficult to isolate speed from other elements. The propriety of any rate of speed depends largely upon all the surrounding facts and circumstances, including the vigilance of the driver and his care in matters other than speed. Jarvis v. Stone, 216 Iowa 27, 33, 247 N. W. 393. We are committed to the rule stated in 10 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., 340, section 6560, that speed may be proven by circumstantial evidence and that such evidence may be sufficient to overcome direct evidence as to speed. Hawkins v. Burton, 225 Iowa 707, 713, 281 N. W. 342. We have also said that in most cases the question of speed must be determined from the circumstances. Rogers v. Jefferson, 226 Iowa 1047, 1051, 285 N. W. 701, and cases cited. See, also, as supporting our conclusion, Janes v. Roach, 228 Iowa 129, 133, 290 N. W. 87; Fraser v. Brannigan, 228 Iowa 572, 293 N. W. 50.

■ II. It is contended that decedent was guilty of contributory negligence as a matter of law. We consider this assignment of error in connection with the attack on instruction 15 which told the jury, in substance, that since there were no eyewitnesses to the material acts of decedent as he approached the intersection, it was to be inferred, in the first instance, that he was in the exercise of ordinary care. It is claimed defendant's testimony as to decedent's conduct rendered the no-eyewitness rule inapplicable and also that any inference of due

care was completely negatived by the evidence. We think the question of contributory negligence was for the jury and that instruction 15 was proper.

Much reliance is placed on defendant's testimony that he saw decedent approaching him, within ten feet, at fifty miles per hour. As pointed out, this testimony is contrary to several physical facts and other evidence. If decedent were driving fifty miles per hour, he would travel the ten feet to the point of collision in less than one seventh of a second. Defendant's opportunity to observe, when he looked, was so extremely limited that the weight of his estimate of speed was lessened. Glass v. Hutchinson Ice Cream Co., 214 Iowa 825, 830, 243 N. W. 352; Owens v. Iowa County, 186 Iowa 408, 411, 169 N. W. 388; 5 Am. Jur. 860, 861, section 651; 32 C. J. S. 157, 160, section 499c, note 47; Lewis v. Miller, 119 Neb. 765, 230 N. W. 769, 70 A. L. R. 532, and annotation 540.

Even if decedent were traveling at fifty miles per hour, we are not prepared to hold that he would thereby be guilty of contributory negligence as a matter of law. He had a right to assume, until he knew or in the exercise of reasonable care should have known otherwise, that any driver approaching from the east would comply with the statute governing the right of precedence. Simanek v. Behel, 232 Iowa 1150, 7 N. W. 2d 792, 794, and cases cited.

We think at the outset plaintiff was entitled to the benefit of the inference of due care which is applicable where there is no eyewitness. Defendant was not such an eyewitness as renders the rule inapplicable. He did not see, and when he looked there was no opportunity to see, what decedent did or failed to do by way of precaution for his own safety. We have applied the inference of due care in cases where there was more opportunity to observe and more testimony than there is here of decedent's conduct prior to his injury. Hayes v. Stunkard, 233 Iowa 582, 10 N. W. 2d 19; Hittle v. Jones, 217 Iowa 598, 601, 250 N. W. 689, and cases cited; Barrett v. Chicago, M. & St. P. R. Co., 190 Iowa 509, 520, 521, 175 N. W. 950, 180 N. W. 670; Phinney v. Illinois Cent. Ry. Co., 122 Iowa 488, 493, 98 N. W. 358. See, also, Lauer v. Elgin, J. & E. Ry. Co., 305 Ill. App. 200, 27

N. E. 2d 315; Fairchild v. Detroit, G. H. & M. Ry. Co., 250 Mich. 252, 230 N. W. 167.

While we have held in certain cases there was contributory negligence as a matter of law, even though the plaintiff at the outset was entitled to the benefit of the no-eyewitness rule (see Hittle v. Jones, 217 Iowa 598, 250 N. W. 689, and Van Gorden v. City of Fort Dodge, 216 Iowa 209, 219, 245 N. W. 736, and cases cited), here the issue was for the jury.

█ III. Defendant contends the verdict for $7,000 is excessive. It is not contended it is the result of passion or prejudice, nor that any evidence bearing on the amount of recovery was improperly admitted. We are not justified in interfering because of the size of the verdict.

Decedent was a farmer of fifty-eight. He and a son operated an eighty-acre farm which his wife had inherited. In the year before his death they had sold about $1,500 of purebred hogs. Decedent also purchased poultry, about fifty thousand pounds a year, earning from this venture about $800 annually. Decedent and his son owned a tractor, a full line of farm machinery and livestock, in equal shares. They also owned the pickup truck involved in the collision. The tractor, cultivator, plow, and disc were mortgaged for $500. The pickup had been purchased in April 1941. There was owing on it about $300. Decedent carried a life insurance policy on which he paid a monthly premium of $7.10. He was healthy and of good character. Decedent and his wife had reared five children. All were high-school graduates. One had attended college. Decedent's father, eighty-seven, and mother, eighty, were living at the time of the trial.

That the verdict is not excessive, see Stein v. Sharp, 229 Iowa 812, 817, 818, 295 N. W. 155; Andrews v. Y. M. C. A., 226 Iowa 374, 416, 284 N. W. 186; Engle v. Nelson, 220 Iowa 771, 784, 785, 263 N. W. 505, and cases cited; Shutes v. Weeks, 220 Iowa 616, 627, 262 N. W. 518, and cases cited; Van Auker v. Steckley's H. S. C. Co., Neb., 8 N. W. 2d 451, 456. We have held, in passing on the size of a verdict, that it is proper to consider the decreased earning power of money. Stein v. Sharp, supra.

█ IV. Defendant complains of certain portions of in-

struction 22 on the measure of recovery. The court told the jury that plaintiff was not entitled to recover the amount actually expended for burial, but only "a reasonable rate of interest during the time you find deceased would have lived on the amount that represents the reasonable value of the materials purchased or services performed in connection with the burial. *The value of such services should not exceed what would appear reasonable and proper for a person of decedent's social and financial standing.*" (Italics supplied.) The jury was also told to determine decedent's expectancy from the evidence.

The allowance of interest on reasonable burial expense during the time decedent probably would have lived is authorized in Brady v. Haw, 187 Iowa 501, 174 N. W. 331, 7 A. L. R. 1306, and Lukin v. Marvel, 219 Iowa 773, 784, 259 N. W. 782. Defendant complains of the sentence we have italicized because, it is said, it permitted an allowance of interest on a sum in excess of the amount actually expended for burial. The complaint is without merit. Instruction 1 states that plaintiff claimed interest during the expectancy of deceased on funeral expenses of the reasonable value of $526.10. This is the amount shown to have been paid and which the undisputed evidence shows was the reasonable value. The italicized statement was evidently inserted for defendant's protection in the event the jury should find that the amount actually expended exceeded what would be reasonable and proper for one of decedent's social and financial standing.

Instruction 22 also states, referring to the general measure of recovery:

"There is no exact rule of law by which such damage can be precisely measured. It must be left to your good judgment and common sense."

It is contended this statement is erroneous and misleading. When considered in connection with all of instruction 22 and other instructions we find no reversible error in this statement. The law governing the award of damages was fully and accurately stated. The jury was told that its verdict must be based on the evidence and reached in the manner stated in the instruction.

We have said that the measure of damages in a case of this kind is more or less uncertain; there is no fixed guide which the jury must follow; approximation is all that can be hoped for; it is impossible to measure the damages with any degree of exactness, and the amount is peculiarly within the discretion of the jury. Andrews v. Y. M. C. A., 226 Iowa 374, 416, 284 N. W. 186; Rastede v. Chicago, St. P. M. & O. R. Co., 203 Iowa 430, 442, 212 N. W. 751; Korab v. Chicago, R. I. & P. Ry. Co., 165 Iowa 1, 15, 146 N. W. 765, Ann. Cas. 1916E, 637; Clark v. Iowa Cent. Ry. Co., 162 Iowa 630, 636, 144 N. W. 332, Ann. Cas. 1916B 457; Lowe v. Chicago, St. P. M. & O. Ry. Co., 89 Iowa 420, 434, 56 N. W. 519.

It is not reasonably probable that the jury was misled by the portions of instruction 22 of which defendant complains. See Bridges v. Welzien, 231 Iowa 6, 10, 11, 300 N. W. 659.

▪ V. Defendant filed a counterclaim against plaintiff and a cross-petition against the son who was part owner of the pickup, seeking recovery for injuries sustained in the collision, claiming that decedent's negligence was the proximate cause and that defendant was free from contributory negligence. The court withdrew these pleadings from the consideration of the jury and this is assigned as error. It may be this ruling was proper on the theory that defendant was guilty of contributory negligence as a matter of law in not making an efficient observation. Smith v. Lamb, 220 Iowa 835, 263 N. W. 311. However this may be, in view of the verdict, the ruling was without prejudice.

Had the counterclaim and cross-petition been submitted, the jury should have been instructed to give no consideration thereto in the event it found plaintiff entitled to recover, because such finding would include the finding that defendant was negligent, that his negligence was the proximate cause of the collision, and that decedent was free from contributory negligence. The verdict for plaintiff did necessarily include such findings, which were fatal to any right of recovery on the counterclaim or cross-petition. There is no possible theory on which both plaintiff and defendant were entitled to recover. We must conclude, therefore, that if the counterclaim and cross-petition had been submitted, defendant could not have recovered thereon.

Harriman v. Roberts, 211 Iowa 1372, 1375, 1376, 235 N. W. 751; Gay v. Hansen, 130 Wash. 107, 226 P. 271; Carr v. Neva, 38 N. D. 158, 164 N. W. 729; Roll v. Dockery, 219 Ala. 374, 122 So. 630, 65 L. R. A. 1473, 1475.

VI. Defendant complains of the court's refusal to give three instructions requested by him. These requests were filed the day after commencement of arguments to the jury. Requested instructions must be filed at the conclusion of the evidence or within such further time as the court may grant. Section 11491, Code, 1939. Furthermore, no proper exception was taken to the refusal to give these requests, as required by Code section 11495. See Weede v. Briar, 232 Iowa 972, 5 N. W. 2d 157, 159, and cases cited. Aside from the above, no reversible error appears. The substance of the requests was sufficiently embodied in the instructions given, especially instructions 9a, 16, 17, 18, and 19.

VII. Finally, it is contended that instruction 1, which stated the issues made by the pleadings, substantially copies plaintiff's petition. If the pleading is concise it is not necessarily prejudicial to copy much of it in the court's statement of the issues. We think instruction 1 is fairly concise and adequately states the issues. See Comfort v. Valley Inv. Co., 232 Iowa 87, 5 N. W. 2d 180, 184; Simanek v. Behel, 232 Iowa 1150, 7 N. W. 2d 792, 794, and cases cited.—Affirmed.

BLISS, OLIVER, SMITH, MANTZ, and MULRONEY, JJ., concur.