EDWARD MINKS, Appellee, v. H. S. STENBERG, Appellant.

No. 41991.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

November 14, 1933.

■■■■■■■■■■■■■■■■

Putnam, Putnam, Langdon & Fillmore, for appellant.

Stipp, Perry, Bannister & Starzinger, for appellee.

MITCHELL, J.—The accident occurred on the 28th day of January, 1932, at about 8 p. m., at the intersection of Beaver and Urbandale avenues in the city of Des Moines. This intersection is a very peculiar one. The streets do not cross at right angles. In addition, the north and south street, Beaver avenue, changes direction at the intersection, and Beaver avenue north of the intersection is in a northwesterly direction. The Urbandale car line runs northwest at this intersection. The place where the car stops is defined by a concrete curb, and that projects out into the street almost as far as the east sidewalk to the north of the intersection, making the place where the front of the car stops project into the street approximately 30 feet further than the line of the east curb line of Beaver avenue on the south of the intersection projected to the north. On the southwest corner of the intersection is Smith's Cafe; on the southeast corner of the intersection, Nelson's Drug Store; on the northwest corner, the Standard Oil Company station; and on the northeast corner, the Atlantic & Pacific Oil station.

The night of the accident was misty, but the intersection was well lighted with street lights. The appellee came up to this inter-

section on the west side of the street about 8 o'clock on the night of the 28th of January, 1932, for the purpose of boarding a westbound street car. On account of the condition of the weather he waited inside of the Smith Cafe at a place where he could see the headlight of the street car as it approached from the southeast on Urbandale avenue.

According to the appellee, upon seeing the Urbandale car approaching he walked out of the Smith Cafe to the curb and looked both ways to see whether there were any automobiles approaching. Before he stepped into the street, upon looking south he' saw an automobile 150 feet away. The record does not clearly show just exactly the direction that the appellee was taking on this night. He was headed for the street car line, which was a distance of 43 feet from the curb in front of the Smith Cafe. Had he gone straight east from the Smith Cafe he would have had to travel a distance of 48 feet, then made a right-angled turn in the middle of the street, and gone straight north 30 feet 8 inches, making a distance of 78 feet and 8 inches from the door of the Smith Cafe to the street car stop. The appellant was driving his car north on Beaver avenue. According to his testimony, he saw the appellee standing on the curb in front of the Smith Cafe when his car was a distance of approximately 150 feet from the intersection. His windshield wiper was working. It was misting, and he was not able to see out of the window on the left side of the car, but could see through the windshield. There is a dispute in the record in regard to the exact speed that the appellant was driving. There is testimony to show that he was driving somewhere between 20 and 40 miles per hour. This was a busy intersection. According to the appellee, when he reached approximately the center of the street he looked again to the left and then to the right, and while he saw the car approaching from the south it was such a distance away that he believed he had ample time to cross the street. According to the testimony of the appellant, he did not see the appellee except when he saw him standing on the sidewalk near the Smith Cafe, when he was a distance of 150 feet south of the intersection, and did not know, according to his own testimony, what he struck, whether it was a man or a woman. He thought it must have been a person but he was not certain. According to the testimony the appellee was struck about 2 feet from the place where he was going to board the street car. Appellee was struck by the right front fender of the ap-

pellant's car. According to the appellant, he was watching the street car, to see whether or not it was going to stop at the intersection, and did not see the appellee at all. The appellant's automobile struck the appellee with such force as to throw the appellee some feet, and, after striking him, ran on some little distance.

The case was submitted to the jury. The jury returned a verdict in the amount of $4,000, and from the failure of the court to direct a verdict in favor of the appellant and from the verdict of the jury the appellant has appealed to this court.

I. It is the contention of the appellant that since he was operating his automobile upon the proper side of the street and approaching a busy business intersection and that the appellee left a place of safety upon the sidewalk and walked rapidly diagonally across the intersection, directly into the path of the appellant's car, a verdict should have been directed for the appellant, for the reasons: First, that there is no negligence shown on the part of the appellant, and his negligence, if any, was not the proximate cause of the accident; and, second, that the appellee was guilty of contributory negligence as a matter of law.

The first issue that the court submitted to the jury on the question of negligence was the failure of the appellant to have his car under proper control. The record shows that this was a closely built-up business district; that the appellant looked only once to his left and that when he was a distance of 150 feet south of the crossing, and then drove through this intersection, this busy suburban business district, at a rate of speed estimated by one witness to be between 35 and 40 miles an hour. The fact is also shown by the record that the impact threw the appellee 35 to 40 feet and that the appellant's car traveled some distance after striking the appellee. Certainly these facts would justify the court in submitting the ground of negligence that the appellant did not have his car under proper control.

The next ground of negligence which was submitted by the court was a failure to keep a proper lookout ahead of his automobile. The appellant testified that the window at his left was full of mist, obscuring his view to the left, and that the only time he looked to the left was when he was a distance of approximately 150 feet from the intersection and at that time saw the appellee standing on the curb in front of the Smith Cafe. The headlights of the appellant's car were burning brightly. Appellant testified

that he was watching the street car, but, had he been looking straight ahead of his car, he would have been able to see the appellee cross the street in front of him, for the appellee crossed directly in front of the appellant's car; in fact, was almost in the clear, for it was the right front fender of the appellant's car that struck the appellee, and yet the appellant testifies that he did not see the appellee at all and did not know what he had struck. Certainly, in the face of such a record the court was justified in submitting to the jury the question of whether or not the appellant had kept a proper lookout ahead of his automobile, and the jury was fully warranted in finding that the appellant had failed to keep a proper lookout.

The next ground of negligence submitted by the court was the question of the operation of an automobile at an excessive rate of speed. The appellant himself testified that he was approaching this intersection at the rate of 20 miles an hour. Other witnesses estimated the rate of speed as between 35 and 40 miles.

The appellant in his brief and argument cites a great many cases of children dashing in front of on-coming automobiles, where the drivers had no time to do anything to prevent an accident. The cases cited by the appellant illustrate cases in which the court can say there was no negligence because the accident happened due to the instantaneous and unexpected act of a quick-moving person, who without any warning throws himself into the path of danger, giving the driver of the automobile no chance to slow up or avoid an accident. That is not the case at bar. The appellant in his argument continuously refers to the appellee as "dashing" across the street. To read the argument one would think the appellee was a sprinter, but the record here shows that the appellee was a man of 71 years of age; that he carried a cane, not for looks but to assist him in getting around. In the case at bar we have a pedestrian in the street for a considerable length of time, proceeding from the curbing across the street, barely struck by the far side of the appellant's automobile. The slightest slackening of speed on the part of the appellant's automobile would have saved the appellee from being struck.

The next contention of the appellant is that the appellee was guilty of contributory negligence as a matter of law. The record shows without dispute that the appellee looked for a car before stepping into the street and saw the appellant's car 150 feet

down the street, and then made a mental calculation that he could cross to the street car in safety. The record also shows that when he had reached approximately the middle of the street the appellee looked again to the left and the right, and again figured that he had plenty of time to cross the street. The question of contributory negligence is generally one for the jury, and this is especially true in street accident cases. Contributory negligence of a farmer struck by an automobile while hurrying across the road was held for the jury. Heacock v. Baule, 216 Iowa 311, 249 N. W. 437. The accident in that case occurred in broad daylight. The plaintiff walked fast or ran slightly as he crossed the road. The plaintiff, when he neared the edge of the traveled way, looked both ways, and thought he could pass in safety. He almost got across, the car of the defendant striking his rear foot, breaking both bones of his leg. In that case the court said:

"We conclude that under the record made, reasonable minds might disagree on this proposition [contributory negligence], and therefore it was a question for the jury."

Again, in the case of Roberts v. Hennessey, 191 Iowa 86, 181 N. W. 798, a pedestrian left the curb and walked to the usual place where passengers boarded the street car. At the time she left the curb, appellant's car was 200 feet away. On the question of her contributory negligence the court said: (page 96)

"The appellee and the appellant each had a right to the use of the street. It was not negligence for the appellee to leave the curb and walk to the usual place where passengers took the street car for Omaha, nor was it negligence, as a matter of law, for her to stand with a crowd of people close to the car track for the short space of time that the car was making the turn from Pearl street into Broadway, a total distance of about 110 feet. At the time the appellee left the curb and went with the crowd of passengers to the position near the car track, the appellant's automobile was some 200 feet to the eastward. Under the circumstances, we cannot hold, as a matter of law, that the appellee was guilty of contributory negligence in failing to watch continuously the movement of the automobile from the time she observed it 200 feet away."

And so in the case at bar, the appellee having looked before he entered the street, again having looked in the middle of the street,

this court cannot say, as a matter of law, that he was guilty of contributory negligence. That question is one for the jury to decide.

It is the contention of the appellant that the court erred in refusing to give the appellant's requested instruction No. 2, which is as follows:

"It is the contention of the defendant in this case that the plaintiff attempted to hurriedly cross the street at a point other than the one provided for pedestrians, or within the sidewalk line.

"In this connection you are instructed that a person has the right to cross a public street or highway at a point other than the one provided for pedestrians, but such person, in . attempting to cross a public street or highway at a point other than the one provided for pedestrians, is required to use greater care than when such person crosses at a point provided for pedestrians. This constitutes and is ordinary care as herein defined, but you are instructed that ordinary care is a relative term and always has reference to the circumstances of the case."

The evidence shows there was no marked place on the pavement for the pedestrians to walk. The requested instruction assumed there was a regular pedestrian crossing, but the record does not show this. By the requested instruction the appellant asked the court to instruct the jury of the degree of care involved. We have no degrees of care or negligence in Iowa; the question is always the same in this state, and the yardstick is "that amount of care and caution which would be exercised by a reasonably prudent man under the same or similar circumstances". The court gave three instructions covering the question of contributory negligence, and in these instructions the court called the jury's special attention to the manner and direction in which the appellee crossed the street. And in instruction No. 15 the court said:

"You are instructed that a pedestrian has the same right to use the streets and thoroughfares as an automobile and a pedestrian has the right to cross the street at an intersection at other than right angles. In this case, the plaintiff had the right to walk out from the curb to the street car track in anticipation of the approaching. street car at the place in question, and it is for you to determine whether, under all the circumstances, the plaintiff was or was not guilty of contributory negligence in the way and manner in which he proceeded from the curbing towards the street car. Plaintiff was

not required to be constantly looking in any one direction nor to follow any set route but was required to use that degree of care and caution, that an ordinarily prudent and careful person would use under the same or similar circumstances."

It will be noted that in the instruction just quoted, the court bore down upon the way and direction in which the appellee proceeded from the curbing to board his car, stating:

·"It is for you to determine whether, under all the circumstances, the appellee was or was not guilty of contributory negligence in the way and manner in which he proceeded from the curbing towards the street car."

It seems to us that the jury was properly instructed on the question of contributory negligence, and there was no error in refusing the appellant's second requested instruction.

The appellant also complains that the court failed to submit to the jury the appellant's theory of the case, thus depriving the appellant of a fair and impartial trial. The only answer filed in this case was a general denial. The defense consisted of denial of negligence, and in an effort to establish that the appellee was guilty of contributory negligence.

On the question of contributory negligence the court instructed the jury very fully and in detail presented the case both from the claims of the appellant and the appellee.

The appellant also complains because of the fact that the court submitted to the jury an issue of failure upon the part of the appellant to drive his car so that it could be brought to a stop within the assured-clear-distance-ahead rule. The record here shows that the appellant was approaching a busy intersection; that the window at his left was covered with mist so that he could not see out of it; that the appellee passed directly in front of the appellant's car, and the appellee must have been within the range of the appellant's headlights for at least 10 or 12 feet before he was struck, for the appellee was struck by the right front fender of the appellant's car. In other words, appellee had passed directly in front of the appellant's car. This evidence certainly was such that the jury could determine appellant's car was going too fast, was approaching so rapidly that he could not stop or swerve it slightly after he could see the appellee.

The appellant raised some other questions, all of which have been given careful consideration by this court. Upon the record here we believe that the case was one for the jury to decide; that it was fairly submitted to the jury upon proper instructions. And the judgment of the lower court must be, and it is hereby, affirmed.

ALBERT, C. J., and STEVENS, ANDERSON, KINTZINGER, and KINDIG, JJ., concur.