R. B. HAWKINS, Appellee, v. ORVILLE BURTON ét al., Appellants. No. 44312.

708

SEPTEMBER 27, 1938.

REHEARING DENIED JANUARY 20, 1939.

Baker & Parrish and Stephens, Thornell & Millhone, for appellants.

G. F. Hoffman, O. M. Slaymaker, D. D. Slaymaker, and R. E. Killmar, for appellee.

SAGER, C. J.—The defendant Burton was an employee, and driver of the truck, of his codefendant Farmers Elevator Company, and was driving with the consent and in the business of the corporate defendant.

The accident occurred about 10:30 o'clock a. m. on the 24th day of October 1935, on the South River bridge on highway No. 65, in Warren county. Plaintiff's testate was one of four persons riding in a Chrysler car, going north, which came in collision with the defendants' truck. In the car was a young man, Lindsey, driving; at his right a girl, Helen Hawkins; behind the driver, the deceased, Eva W. Cain, and at her side, Mrs. Hawkins.

The bridge is 188 feet long, made up of a main or truss span of 102 feet, with approaches 43 feet long. The highway southward from the bridge swings in a curve to the left for a considerable distance. To the north for a quarter to a half mile the highway runs north and then veers to the northwest. The

bridge between trusses is 18 feet wide. The pavement thereof is narrowed by a cement curb on either side extending from each side of the bridge approximately 8 or 9 inches.

While there was conflict in some aspects of the testimony, the jury could have found the facts hereinafter set forth. We omit in large measure the gruesome details which appear in this record.

The collision occurred at a point approximately 32 or 33 feet from the south end of the truss span. At that point, after the accident, there was a mark on the east curb which seemed to indicate, when considered with marks on the wheel of the car, the place at which the Chrysler car struck after its contact with the truck. After the accident the car stood in a diagonal direction facing northwest, with one corner against the east rail which ran along the trusses of the bridge. The bridge on that side, and the car, had marks and paint which indicated that the two had come together with great violence. The first witness on the scene said the body of Mrs. Hawkins lay about 7 feet south of the car, and that of the driver a short but undisclosed distance beyond her to the south, both on the east half of the bridge. Helen Hawkins was found about 18 feet north of where the car stood. Mrs. Cain's body was not discovered for a short time, but was later found in the river bed under the east edge of the bridge. Helen was the only one who was not killed. The trusses of the bridge from a point about 32 feet from the south end were bespattered with blood and brains, and hair of the color of that of Mrs. Cain. In the river bed there was a streak or string of brains leading a distance of 59 feet southeast from the body, and not far away the door and hinges of the Chrysler. The truck, after the accident, passed off the bridge, knocking down the guard-rail and several posts, and, at a point approximately 188 feet from where the collision occurred, turned over, coming to rest on the east side of the road.

This condensed description will give some idea of the condition of the car. The front bumper was intact; the headlights were unbroken, and worked. There were no scratches or marks on the front bumper. The left front wheel was all right except that it showed that the hub cap had been struck. The engine worked all right, and the horn worked also. The side of the left front fender 8 or 10 inches back from the front end was scraped, and as it went back it had been struck harder. The

windshield was gone and the left parking light was missing. The steering wheel was bent. The running board was loose and pushed down. The whole left side of the car above the running board was gone, as was the top. The left rear wheel was off, except for the hub and part of the spokes. The left end of the rear axle was pushed back. The rear seat and the back end were loose. The spare tire had been bent or forced out, and the left rear tire and rim were loose. There was a scratch on the back panel at the right rear corner at a distance above the ground corresponding to the rail of the bridge. There were no marks on the right-hand side of the car except the one just mentioned.

There was much blood and debris at the place of the collision, all on the east, or the Chrysler's, side of the bridge. There were no marks on the floor of the bridge, or the west side, and none on the rail. Defendants contend that there was a scratch on the west side, made by a rod which had been broken in the collision and which dragged as the truck went on from the point of collision. There was conflict, however, as to this.

Helen Hawkins testified that as they went onto the bridge they were driving about 25 or 30 miles per hour, probably closer to 25 miles. Her memory of the events extended only to the point at or near the south end of the truss span. She testified that at no time was the car over on the west side of the black line.

The driver of the truck, Burton, approached the bridge at about 40 miles an hour, which he claims to have reduced to about 30 miles an hour. He testified that at the moment of contact he was driving 25 miles an hour. The truck weighed 5,600 pounds, with a load of corn weighing something over 9,900 pounds.

The county attorney, who was at the scene of the accident in his official capacity, testified that he discovered no scratches on the floor of the bridge; that he made an investigation of the rate of speed at which the truck driver claimed he was driving, and that Burton said in substance that he was driving 40 miles an hour, but had slowed down to let a truck off the bridge, and that he went onto the bridge at the rate of 35 miles an hour.

The truck was 21 or 22 feet long, and the bed of the box about 12 feet long inside, was 7½ feet wide outside measurements, and had a depth of 37 inches. The bed was well built

of wood with steel reinforcements around the square corners. The corners stuck out about 2½ feet beyond the cab. It had dual wheels with pneumatic tires. In the collision the left front corner of the box was broken open in a V shape, with an opening at the top perhaps a foot wide. A portion of a hand was found wedged in this opening.

The condition of the truck after it was removed from the scene of the accident was thus described: On the left side of the truck the headlight was gone and the reflector was hanging out. The left front fender was smashed; the left cab door was smashed in. There were paint marks on the left door, corresponding to the color of the paint on the Chrysler car.

The defendant Burton on a previous occasion testified that he did not see the Chrysler car until he was in the middle of the bridge, which brought him within about 50 feet of the car before he noticed it. The distance given is an approximation, but the jury, from it and other circumstances, could get an idea of the force with which these motor vehicles came together. The defendant's claim that the Chrysler was traveling on the wrong side of the road, and that the driver made an attempt to pull it over to its own side, with the result that the rear end of the car was "slammed against the front end of the truck," is hardly borne out by the position and condition in which the Chrysler was found after the accident.

With this general outline the questions of negligence which the court submitted can be fairly well understood.

Before proceeding to a discussion of that, however, we take up defendants' first complaint. This is that the court erred "in overruling the appellants' motion to enter an order setting aside the verdict of the jury and to grant to the defendants a new trial, and especially in overruling grounds No. II and No. III of said motion for new trial, which said grounds were that the court was in error in overruling the defendants' motion for a directed verdict at the close of plaintiff's evidence, and at the close of all the evidence in said case." Since the motion for a directed verdict contains twenty or twenty-one grounds, it will be seen that under our decisions this specification is too vague and general to invite our consideration of the errors defendants seek to present.

"We have repeatedly announced that blanket statements of

error relied upon for reversal bring nothing before the court for consideration.'' (Citing cases.) Dailey v. Standard Oil Co., 213 Iowa 244, 247, 235 N. W. 756, 758.

Defendants complain that the court erred in submitting the specifications of negligence contained in instruction No. 7. These are:

''(1) That when said truck met the Chrysler sedan the defendant, Burton, failed to turn said truck to the right and give one-half of the traveled way to the driver of the Chrysler sedan.

''(2) That said defendant, Burton, at the time and place of the collision, which occurred on a bridge on said highway, did not have said truck under control, and did not reduce the speed of said truck to a reasonable and proper rate as he met the Chrysler car on said bridge.

''(3) That said truck was a freight-carrying vehicle, equipped with pneumatic tires, and at the time of the collision was traveling in excess of thirty-five miles per hour.''

A consideration of the record persuades us that the court was not in error in submitting the questions whether the truck was under control, and whether its speed had been reduced to a reasonable and proper one as it met the Chrysler car on the bridge.

Section 5031 of the Code expressly requires that the person operating a motor vehicle shall have the same under control and shall reduce the speed to a reasonable and proper rate. ''3. When approaching and traversing a crossing or intersections of public highways, or a bridge, * * *.'' See, also, Minks v. Stenberg, 217 Iowa 119, 250 N. W. 883; Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862.

Considering the fact that the clearance between the curbs on this bridge was approximately 16½ to 17 feet, and the truck 7 feet 8 or 9 inches wide in its outside measurements, the jury might well have considered that 35 or 40, or 30 miles, or even less,—whatever the speed actually was—was not a compliance with the requirements of the statute with reference to the situation that the driver might expect to meet at that point. He had been over this bridge and was bound to take notice of the narrow margin of safety that existed in the event he should

meet another vehicle on the bridge. That, in connection with the fact that he did not see the Chrysler car until he was in the middle of the bridge, might well suggest negligence on his part in the operation of the truck.

Defendants complain of the submission of the first and the third grounds of negligence, but we find no error here. The first had to do, as has been set out, with defendant's failure to turn the said truck to the right and give one-half the traveled way. The circumstances surrounding the accident made it a jury question as to what the fact was. The condition of the car and of the truck, the location of the bodies, particularly that of Mrs. Cain, the fact that there was no debris west of the center of the highway, the location of the car door, and the blood and brains splattered on that side of the bridge, were circumstances from which the jury could have found defendant Burton negligent in the particulars charged.

The third ground, with reference to a freight-carrying vehicle traveling in excess of 35 miles per hour, was likewise properly submitted by the court. Section 5029 of the Code makes it unlawful for the driver of a freight-carrying vehicle, with pneumatic tires, to drive it at a speed exceeding 35 miles per hour.

The jury was not bound to take the testimony of the defendant Burton as an absolute verity. It was warranted in considering not only the verbal testimony but all the facts and circumstances surrounding the accident.

These quotations from Blashfield's Cyclopedia of Automobile Law and Practice, vol. 10, sec. 6560, give what we regard as a sound statement of the law on this subject:

"Although the evidence may be entirely circumstantial as to the rate of speed at which an automobile was operated, it may be sufficient to support a reasonable conclusion reached by the jury on the issue of negligence. Circumstances connected with an accident may be sufficient to overcome direct evidence as to the speed of a motor vehicle. * * *

"Thus evidence as to the force of the impact of a collision, or as to the distance which an automobile causing an injury overshot the point of the accident before being brought to a standstill, is of significance, and may be by itself or in connec-

tion with other circumstances of sufficient force to warrant a jury in finding negligence as to speed."

See, also, Luther v. Jones, 220 Iowa 95, 261 N. W. 817.

Defendants cite cases which it is claimed support their contentions with reference to the matters just stated, but we do not read them to that end. Among them is Deweese v. Iowa Transit Lines, 218 Iowa 1327, 256 N. W. 428. This case is rather an authority against than for the defendants. We there called attention to the case of Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, and quoted as follows [page 915 of 214 Iowa, page 554 of 243 N. W.]:

"Where the statute or ordinance has fixed the standard of care, the failure to observe such standard is negligence, and when * * * it is shown that the defendant failed to observe the standard of care thus fixed, a case is made for the jury in the first instance. In such case, the defendant *may offer proof excusing his failure to observe such legal standard of care. If, however, he fails to furnish proof of such legal excuse, then it is accurate to say that negligence is established as a matter of law.*" (Italics ours.)

This pronouncement has since been consistently followed. See also, Holub v. Fitzgerald, 214 Iowa 857, 243 N. W. 575.

Still another ground of complaint is that the court erred in overruling defendants' objections to the conduct of plaintiff's attorney during his examination of the jury, wherein it is claimed said attorney prejudicially interjected the question of insurance into the minds of the jury on their *voir dire.* Without setting forth the nature of the examination it appears that one of plaintiff's counsel did interrogate the jurymen with reference to any connection they or their spouses might have with a certain insurance company. There is some misunderstanding or disagreement between the court and counsel on the other side as to whether plaintiff's attorney had in his hands and exhibited, more or less covertly, what purported to be a policy of insurance. This was a matter strictly within the discretion of the trial court, and finding no abuse of discretion, we are compelled to hold that there was no prejudicial error here. See Raines v. Wilson, 213 Iowa 1251, 239 N. W. 36; Holub v. Fitzgerald, supra; note to 56 A. L. R. 1418, subdiv. IV-A; 74 A. L. R. 849; 95 A. L. R. 388; 105 A. L. R. 1319.

■ Only one other complaint of defendants remains for attention, and that has to do with the refusal on the part of the court to permit one of defendants' witnesses to testify to a certain scratch mark on the south approach of the bridge in question. Defendants' claim was that in the collision a supporting rod was broken and the end dropped down to the pavement and dragged, leaving a mark, which tended to show the location of the truck and its direction at and after the collision. The court's refusal apparently was based upon the fact that under a rule of practice in that district only five witnesses are permitted to testify to one subject matter, the court holding that since the defendants had produced five or more witnesses to testify to the condition of the bridge they could not be allowed to avoid the rule by calling different witnesses to testify to separate portions of the same descriptive matter. The record shows several witnesses for defendants did testify to having seen a scratch of some kind in the approximate location contended for by the defendants, though this was denied by an equal or greater number of plaintiff's witnesses. The testimony was at best cumulative, and we hold the refusal to admit it was not prejudicial error.

We are not permitted to regard an exception unless the ruling has been on a material point and the effect thereof prejudicial to the rights of the party excepting. Code section 11548. A consideration of the whole record persuades us that this ruling falls within the purview of that section. See also, Code section 11228.

From the foregoing it follows that we have found no prejudicial error and that therefore the trial court's judgment must be and it is affirmed.

The motion to dismiss the appeal, submitted with the case, is overruled.—Affirmed.

ANDERSON, MITCHELL, KINTZINGER, DONEGAN, HAMILTON, and STIGER, JJ., concur.